| | |
|---|---|
| KRISTIN HARDY,<br><br>    Plaintiff,<br><br>v.<br><br>KELLY SANTORO, et al.,<br><br>    Defendants. | Case No. 1:21-cv-00327-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS ACTION BE DISMISSED FOR FAILURE TO STATE A CLAIM<br><br>(ECF No. 16)<br><br>OBJECTIONS, IF ANY, DUE WITHIN TWENTY-ONE DAYS<br><br>ORDER DIRECTING CLERK TO ASSIGN DISTRICT JUDGE |

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

Kristin Hardy ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action. Plaintiff filed the complaint commencing this action on March 1, 2021. (ECF No. 1). On March 24, 2021, the Court screened Plaintiff's complaint and found that it failed to state any cognizable claims. (ECF No. 11). The Court gave Plaintiff thirty days to either: "a. File a First Amended Complaint; or b. Notify the Court in writing that he wants to stand on his complaint." (Id. at 10-11).

On April 21, 2021, Plaintiff filed his First Amended Complaint. (ECF No. 16). The Court has reviewed Plaintiff's First Amended Complaint, and for the reasons described in this order will recommend that this action be dismissed for failure to state a claim.

Plaintiff has twenty-one days from the date of service of these findings and

1

recommendations to file his objections.

## I. SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). As Plaintiff is proceeding *in forma pauperis* (ECF No. 9), the Court may also screen the complaint under 28 U.S.C. § 1915. "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). A plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard. Id. at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (citation and internal quotation marks omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. Iqbal, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after Iqbal).

\\\

\\\

## II. SUMMARY OF PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff alleges as follows in his First Amended Complaint:

On January 1, 2019, the facility "A" dayroom program was suspended due to a cell search of two Hispanic inmates. That same day, a large group of correctional officers entered the building and began conducting systematic cell and unclothed body searches.

Plaintiff was ordered by an unidentified correctional officer to remove his clothing, to lift his arms, to lift his scrotum, and to bend over at the waist and cough. No contraband was found on Plaintiff's person or in his cell. Prison official subsequently placed Facility "A" on a "modified program" while buildings 1, 3, 4, and 5 were also searched.

Upon information and belief, the modified program and searches of Facility "A" were approved by defendant Santoro via Program Status Report ("PSR"), and allegedly due to some unidentified inmate being targeted for murder.

Five days later, on January 6, 2019, after searches were compete, Plaintiff was inside of his assigned cell when he noticed a large group of correctional officers enter his building.

An officer whom Plaintiff identified as defendant Valencia opened Plaintiff's cell door and ordered Plaintiff to remove his clothing. Plaintiff asked defendant Valencia what was going on and explained that he had just been subjected to a cell and unclothed body search five days before. Defendant Valencia did not respond or give a basis for the search.

Plaintiff then removed all of his clothing except his boxer shorts. After inspecting Plaintiff's clothing, defendant Valencia went a step further and ordered Plaintiff to also remove his boxer shorts.

Plaintiff, seeking to protect his body from invasion of privacy and unreasonable search, refused to strip completely nude. Defendant Valencia then summoned defendant Moreno for assistance.

Defendant Moreno ordered Plaintiff to take off his boxers. Plaintiff again declined to get completely nude in order to protect his bodily privacy from unreasonable search. Defendant Moreno then ordered Plaintiff detained, and Plaintiff was escorted to the Facility "A" gymnasium and placed in a holding cage.

3

Said cage was then surrounded by defendants Moreno, Valencia, Chavez, Dohs, and Ceballos. Said defendants then began to be psychologically coercive, making verbal threats to place Plaintiff in restricted housing unless Plaintiff submitted to an unclothed body search.

Defendant Ceballos then interjected that Plaintiff would be charged with attempted murder unless he submitted to the search. At that point, defendant Moreno ordered defendant Chavez to handcuff Plaintiff and escort him to the visiting area, where he was ran through a full x-ray "low dose" body scanner. No contraband was found.

It is Plaintiff's understanding that on September 1, 2017, the Secretary of the California Department of Corrections and Rehabilitation proposed a rule change to implement the low dose body scanners and to make unclothed body searches redundant. Upon information and belief, said regulation change was in effect on January 1, 2019, and January 6, 2019.

After Plaintiff was x-rayed, he was escorted back to the gymnasium holding cage, where defendant Ceballos offered to send Plaintiff back to his assigned housing if he would submit to an unclothed search, despite the fact that Plaintiff had just been searched via x-ray machine.

Plaintiff, in fear of further retaliation and punitive actions by staff, submitted to a search in the nude. His mouth, ears, hands, arms, and anal area were searched. No contraband was recovered.

Plaintiff, while getting dressed, asked defendant Ceballos the justification for the searches of his person. Defendant Ceballos simply stated that defendant O'Daniel ordered a second comprehensive search of building A-2.

Upon information and belief, no other buildings on Facility "A" underwent a second comprehensive search. Pursuant to California Department of Corrections and Rehabilitation regulations, body and cell searches are to be conducted no more "[f]requently than necessary" to control contraband or recover stolen/missing property.

Upon return to his assigned quarters, Plaintiff observed his cell in complete disarray, with his mail and legal documents scattered about and various property items missing.

On January 9, 2019, Plaintiff filed an administrative appeal with defendant Santoro,

4

alleging retaliatory/punitive cell and body searches. The appeal was denied and no corrective action was taken.

Prior to filing this appeal, Plaintiff submitted several other appeals regarding retaliatory cell and body searches conducted by correctional staff at North Kern State Prison. Said searches occurred on August 16, 2017, June 4, 2018, June 15, 2018, and June 22, 2018.

The hiring authority, including defendants Kibler and O'Daniel, reviewed said appeals and took no corrective action. None of the defendants ever provided a legitimate penological basis as to why Plaintiff was subjected to two cell searches and three searches of his person in a five-day period.

Plaintiff appears to bring a claim under the First Amendment for retaliation and a claim under the Fourth Amendment for an unreasonable search.

### III. ANALYSIS OF PLAINTIFF'S COMPLAINT

#### A. Section 1983

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. County of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing

5

"under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark County Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

A plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. Iqbal, 556 U.S. at 676-77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. See Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 691, 695 (1978).

Supervisory personnel are not liable under section 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisory position, the causal link between the supervisory defendant and the claimed constitutional violation must be specifically alleged. Iqbal, 556 U.S. at 676-77; Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). To state a claim for relief under section 1983 based on a theory of supervisory liability, a plaintiff must allege some facts that would support a claim that the supervisory defendants either: were personally involved in the alleged deprivation of constitutional rights, Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989); "knew of the violations and failed to act to prevent them," Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); or promulgated or "implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation," Hansen, 885 F.2d at 646 (citations and internal

quotation marks omitted).

For instance, a supervisor may be liable for his or her "own culpable action or inaction in the training, supervision, or control of his [or her] subordinates," "his [or her] acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that showed a reckless or callous indifference to the rights of others." Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991) (citations, internal quotation marks, and brackets omitted).

### B. Plaintiff's Claim for an Unreasonable Search in Violation of the Fourth Amendment

The Fourth Amendment prohibits only unreasonable searches. Bell v. Wolfish, 441 U.S. 520, 558 (1979); Byrd v. Maricopa County Sheriff's Office, 629 F.3d 1135, 1140 (9th Cir. 2011); Michenfelder v. Sumner, 860 F.2d 328, 332 (9th Cir. 1988). The reasonableness of the search is determined by the context, which "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails." Bell, 441 U.S. at 559. Factors that must be evaluated are "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." Id.; Bull v. City and County of San Francisco, 595 F.3d 964, 972 (9th Cir. 2010) (*en banc*).

The Fourth Amendment applies to the invasion of bodily privacy in prisons and jails. Bull, 595 F.3d at 974-75. "[I]ncarcerated prisoners retain a limited right to bodily privacy." Michenfelder, 860 F.2d at 333. The United States Court of Appeals for the Ninth Circuit has long recognized that "[t]he desire to shield one's unclothed figure from view of strangers, and particularly strangers of the opposite sex, is impelled by elementary self-respect and personal dignity." York v. Story, 324 F.2d 450, 455 (9th Cir. 1963); see also Michenfelder, 860 F.2d at 333 (same). "The [Supreme] Court [has] obviously recognized that not all strip search procedures will be reasonable; some could be excessive, vindictive, harassing, or unrelated to any legitimate penological interest." Michenfelder, 860 F.2d at 332.

Once again, Plaintiff has not sufficiently alleged that the second strip search was unreasonable. Plaintiff is a prisoner, and has only "a limited right to bodily privacy." Michenfelder, 860 F.2d at 333. The search itself, while invasive, appears to have been

7

conducted in relative privacy. Plaintiff appears to allege that only one officer conducted the search, and there is no indication that anyone else was able to view Plaintiff during the search.

It does not appear that Plaintiff was ever told why he was subjected to the second strip search, but in any event, there are no allegations in the complaint suggesting that the search was vindictive, conducted to harass Plaintiff, or unrelated to any legitimate penological interest.[1]

Plaintiff does allege that he was strip searched twice in five days. He also alleges, in a conclusory fashion, that certain defendants retaliated against him by subjecting him to the second strip search because he engaged in protected activity and speech. However, there was a gap between the first and second strip searches, and the second search occurred during a wide-spread search of building A-2. There are no factual allegations suggesting that this wide-spread search was conducted to harass Plaintiff, or that any defendant decided to strip search Plaintiff because Plaintiff engaged in protected activity and speech. Plaintiff does not identify any statements by the defendants connecting the alleged strip search to his protected activity. There are also no allegations suggesting that the defendants who conducted the second strip search knew that Plaintiff had engaged in protected activity.

Finally, Plaintiff appears to allege that the strip search violated policy because the regulation to allow the use of low dose body scanners was enacted to make body searches redundant. This allegation is insufficient to state a claim. "[A] violation of a prison regulation or policy is not a per se constitutional violation." Brown v. Galvin, 2017 WL 6611501, at *3 (E.D. Cal. Dec. 27, 2017); accord Hilson v. Arnett, 2017 WL 6209390, at *9 (E.D. Cal. Dec. 8, 2017) (same).[2]

---

[1] Plaintiff does state that the January 1, 2019 searches of Facility "A" were allegedly due to some unidentified inmate being targeted for murder, and it appears that the January 6, 2019 search may have been a continuation of the first. This appears to be a legitimate penological interest for the searches.

[2] Additionally, nothing in the regulation itself states that low dose body scanners were meant to make strip searches redundant. The Notice of Proposed Regulatory Action does state that "[t]he low dose full body scanner is a non-intrusive device that scans the whole body in seconds, detecting the presence of contraband secreted or ingested inside the human body. The use of this device eliminates the need for an inmate to be subjected to an unclothed body search." (ECF No. 16, p. 36). However, it also states that the CDCR "is *expanding* available searching tools for use on inmates to detect drugs and other contraband." (Id. at 32) (emphasis added). Moreover, the regulation itself refers to inmates being subjected both to unclothed inspections and low dose body scanners. Cal. Code Regs. tit. 15, § 3287(b), (c).

Accordingly, Plaintiff has failed to sufficiently allege that the strip search was unreasonable, and thus has failed to state a Fourth Amendment claim for an unreasonable search against any defendant.

The Court notes that Plaintiff also alleges that some defendants harassed him into complying with their orders directing him to submit to a search by threatening to place him in restricted housing unless he submitted to the search. One defendant allegedly told him that he would be charged with attempted murder unless he submitted to the search.

However, as discussed above, Plaintiff has not sufficiently alleged that the search itself violated the constitution. And, verbal harassment is generally insufficient to state a constitutional violation. Allegations of name-calling, verbal abuse, or threats generally fail to state a constitutional claim. See Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996) ("[V]erbal harassment generally does not violate the Eighth Amendment."), opinion amended on denial of reh'g, 135 F.3d 1318 (9th Cir. 1998); see also Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987) (holding that a prisoner's allegations of threats allegedly made by guards failed to state a cause of action).

Verbal harassment may violate the constitution when it is "'unusually gross even for a prison setting and [is] calculated to and [does] cause [plaintiff] psychological damage." Cox v. Kernan, 2019 WL 6840136, at *5 (E.D. Cal. Dec. 16, 2019) (alterations in original) (quoting Keenan, 83 F.3d 1083 at 1092). Plaintiff has not sufficiently alleged that the harassment was unusually gross even for a prison setting, and Plaintiff has not sufficiently alleged that the harassment was calculated to cause Plaintiff psychological damage.

### C. Plaintiff's Claim for Retaliation

There are five basic elements to a First Amendment retaliation claim: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).

While prisoners have no freestanding right to a prison grievance process, see Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir.2003), "a prisoner's fundamental right of access to the courts hinges on his ability to access the prison grievance system," Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir.1995), overruled on other grounds by Shaw v. Murphy, 532 U.S. 223, 230 n.2 (2001). Because filing administrative grievances and initiating civil litigation are protected activities, it is impermissible for prison officials to retaliate against prisoners for engaging in these activities. Rhodes, 408 F.3d at 567.

Retaliation claims are not limited to the First Amendment. "A prisoner suing prison officials under section 1983 for retaliation must allege that he was retaliated against for exercising his constitutional rights and that the retaliatory action does not advance legitimate penological goals, such as preserving institutional order and discipline." Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994).

Plaintiff appears to allege that the second strip search and the cell search that occurred after (or during) the second strip search were retaliatory. However, Plaintiff has failed to allege that any defendant took an adverse action against Plaintiff because he engaged in protected conduct.

As described above, it does not appear that the second strip search was unconstitutional, and Plaintiff does not have a constitutional right to refuse to submit to such a search. Additionally, while Plaintiff alleges that certain defendants retaliated against him by subjecting him to the strip search and cell search because he engaged in protected activity and speech, there are no factual allegations supporting these conclusory assertions. Plaintiff does not identify any statements by the defendants connecting the alleged strip search or cell search to his protected activity. There are also no allegations suggesting that the defendants who conducted the strip search or cell search knew that Plaintiff had engaged in protected activity. Finally, there are no allegations that the alleged retaliatory conduct occurred near in time to Plaintiff engaging in protected conduct.

Thus, Plaintiff has not sufficiently alleged that he was retaliated against because he engaged in protected conduct. Accordingly, Plaintiff has failed to state a retaliation claim

under the First Amendment against any defendant.

### IV. CONCLUSION, RECOMMENDATIONS, AND ORDER

The Court recommends that this action be dismissed without granting Plaintiff further leave to amend. In the Court's prior screening order, the Court identified the deficiencies in Plaintiff's complaint, provided Plaintiff with relevant legal standards, and provided Plaintiff with an opportunity to amend his complaint. Plaintiff filed his First Amended Complaint with the benefit of the Court's screening order, but failed to cure the deficiencies identified in the screening order. Thus, it appears that further leave to amend would be futile.

Accordingly, the Court HEREBY RECOMMENDS that:

1. This action be dismissed for failure to state a claim; and
2. The Clerk of Court be directed to close this case.

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within twenty-one (21) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

Additionally, IT IS ORDERED that the Clerk of Court is directed to assign a district judge to this case.

IT IS SO ORDERED.

Dated: __May 7, 2021__              /s/ Erica P. Grosjean
                                    UNITED STATES MAGISTRATE JUDGE