1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

KRISTIN HARDY,

              Plaintiff,

v.

R. MORENO, *et al.*,

              Defendants.

Case No. 1:21-cv-00327-KES-EPG (PC)

FINDINGS AND RECOMMENDATIONS TO:

1)  GRANT DEFENDANTS' REQUEST FOR JUDICIAL NOTICE, DEFENDANTS' MOTION TO FILE CONFIDENTIAL MEMO UNDER SEAL, AND PLAINTIFF'S MOTION TO FILE CONFIDENTIAL MEMORANDUM (ECF Nos. 186, 232, 236)

2)  GRANT MOTION FOR SUMMARY JUDGMENT FILED BY DEFENDANTS VALENCIA, MORENO, CHAVEZ, AND DOHS, AND DISMISS THEM FROM THIS ACTION (ECF No. 184); AND

3)  DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF No. 170).

OBJECTIONS, IF ANY,
DUE WITHIN 30 DAYS

     Kristin Hardy is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983. Plaintiff sued correctional officers Valencia, Moreno, Chavez, Dohs, and Ceballos at North Kern State Prison (NKSP), alleging that after a full-body scan, he was then also strip searched without justification. (ECF Nos. 22, 42, & 43).

1

Defendants Valencia, Moreno, Chavez, and Dohs have appeared (ECF No. 46) and filed Motion for Summary Judgment (ECF No. 184).[1] Plaintiff has opposed their motion and also filed his own Motion for Summary Judgment (ECF No. 170). These motions as well as accompanying requests for judicial notice and filings under seal (ECF Nos. 186, 232, 236) are now before the Court.

As a preliminary manner, the Court will recommend that motions concerning certain documents—Defendants' Request for Judicial Notice (ECF No. 186), Defendants' Request to file Under Seal (ECF No. 232), and Plaintiff's Motion to File Confidential Memorandum (ECF No. 236)—be **GRANTED**.

For the reasons stated below, the Court will recommend that Motion for Summary Judgment filed by Defendants Valencia, Moreno, Chavez, and Dohs (ECF No. 184) be **GRANTED**.  For the same reason, the Court will recommend that Plaintiff's Motion for Summary Judgment (ECF No. 170) with respect to these Defendants be **DENIED.**

# I.      BACKGROUND

Plaintiff filed his original complaint on March 1, 2021. (ECF No. 1.) Following a screening order, Plaintiff filed a First Amended Complaint (FAC) on April 21, 2021. (ECF No. 16). In the FAC, Plaintiff raised claims under the First and Fourth Amendments, alleging that he was subjected to an unreasonable strip search after a full-body scan.

Specifically, Plaintiff's FAC alleged that defendant Valencia opened Plaintiff's cell door and ordered Plaintiff to remove his clothing. Plaintiff asked defendant Valencia what was going on and explained that he had just been subjected to a cell and unclothed body search five days before. Nevertheless, Defendant Valencia and Defendant Moreno attempted to conduct an unclothed search of Plaintiff.  However, Plaintiff refused to remove all of his clothing for the search.  Plaintiff was escorted to the Facility "A" gymnasium and placed in a holding cage.

---

[1] Defendant Ceballos has not appeared or otherwise offered a defense, and Plaintiff has obtained a clerk's entry of default against defendant Ceballos (ECF No. 48) and has filed a motion for default judgment (ECF No. 50). The Court has reserved ruling on the motion for default judgment until resolution of the claims against the remaining defendants.

Plaintiff then underwent a body scan in a full x/ray "low dose" body scanner.  No contraband was found.

After Plaintiff was x-rayed, he was escorted back to the gymnasium holding cage, where defendant Ceballos refused to send Plaintiff back to his assigned housing unless he submitted to an unclothed search, despite the fact that Plaintiff had just been searched via x-ray scanner.  Plaintiff eventually submitted to the unclothed search by defendant Ceballos.  (ECF No. 18 at 3–4).

On May 7, 2021, the Court screened the FAC and issued Findings and Recommendations. (ECF No. 18). The Court found that Plaintiff again failed to state any cognizable claim and recommended that the FAC be dismissed. (*Id.* at 11.)

However, on November 16, 2021, then presiding District Judge Dale Drozd issued an order adopting Findings and Recommendations in part. (ECF No. 22.) The district judge concluded that "plaintiff did not sufficiently allege a claim of retaliation" and that the dismissal of Plaintiff's claims "brought against prison administrators and supervisors because plaintiff did not allege in his complaint a specific connection between those defendants and the allegedly unreasonable search." (*Id.* at 2–3). But the district judge found that Plaintiff's allegation that he was subjected to an unclothed search following a body scan stated a Fourth Amendment claim and should proceed past screening, explaining:

> Low-dose scanners like the one used in the first January 6, 2019 search of plaintiff "scan the whole body in seconds, detecting the presence of contraband secreted or ingested inside the human body." Notice of Proposed Regulatory Action for Cal. Code Regs. tit 15 § 3287(b), (c) at 3. As such, according to at least a facial reading of California Regulations, "the use of this device eliminates the need for an inmate to be subject to an unclothed body search." *Id.* Yet, according to the allegations of plaintiff's complaint, immediately after plaintiff's full body was scanned and despite the fact that plaintiff was in the custody of the correctional officers after that body scan, he was subjected to an additional strip search without obvious justification.  Several circuit courts have allowed inmates to pursue Fourth Amendment claims where, as here, the inmate was subjected to multiple searches despite having no opportunity to obtain contraband between inspections. *See Turkmen v. Hasty*, 789 F.3d 218, 261 n.44 (2d Cir. 2015) (strip searches where an inmate has had no opportunity to acquire contraband may be unnecessary and therefore such allegations are

sufficient to state a constitutional claim) (citing *Hodges v. Stanley*, 712 F.2d 34, 35–36 (2d. Cir. 1983)); *see also Parkell v. Danberg*, 833 F.3d 313, 329 (3d Cir. 2016) (denying summary judgment because a disputed issue of material fact existed regarding whether the strip search of the inmate was constitutionally reasonable where that inmate had no opportunity to procure contraband.).

(*Id.* at 3). Accordingly, the district judge found Plaintiff stated a cognizable Fourth Amendment claim for the unclothed search following the body scan on January 6, 2019 and ordered that Plaintiff's Fourth Amendment claim for unreasonable search against defendants Valencia, Moreno, Chavez, Dohs, and Ceballos in his FAC based on the unclothed search on January 6, 2019 should proceed past screening. (*Id.* at 3).

The Court ordered service of FAC, but Plaintiff nevertheless filed the operative Second Amended Complaint (SAC) on February 11, 2022.[2] (ECF No. 43.) On March 7, 2022, Defendants Moreno, Chavez, Valencia, and Dohs, answered the operative complaint. (ECF No. 46.)

Defendant Ceballos did not appear. Accordingly, on March 18, 2022, at the request of Plaintiff (ECF No. 47), the Clerk of Court entered defendant Ceballos's default (ECF No. 48). Plaintiff then filed a motion for default judgment against defendant Ceballos on March 28, 2022 (ECF No. 50), which the Court ordered to be held in abeyance until "judgment is appropriate for the remaining defendants or upon further order of the Court." (ECF No. 54 at 2).

## II.    SUMMARY OF MOTIONS FOR SUMMARY JUDGMENT

### A.    Moving Defendants' Motion for Summary Judgment

On July 5, 2023, Defendants Moreno, Chavez, Valencia, and Dohs ("the moving Defendants") filed a motion for summary judgment. (ECF No. 184). Defendants argue that they did not participate in the unclothed search of Plaintiff on January 6, 2019, were not present during that search, did not witness it, did not order it, and were not supervising Defendant

---

[2] Plaintiff moved to amend his Complaint in an effort to "clean up" the First Amended Complaint and to remove the claims and defendants that had been dismissed. (ECF No. 41.) The Court granted Plaintiff leave to amend for this purpose only. (ECF No. 42.)

4

Ceballos who did conduct the search. (ECF No. 184–1 at 11–12). Therefore, "Defendants Moreno, Dohs, Valencia, and Chavez cannot be liable under § 1983 for conduct that they were not personally involved in." (*Id.* at 12). They also argue that the search was reasonable and that they are entitled to qualified immunity. (*Id.* at 12–23.)

In support of their motion, Defendants filed sworn declarations of Defendant Chavez (ECF No. 184–3), Defendant Valencia (ECF No. 184–4), Defendant Dohs (ECF No. 184–5), and Defendant Moreno (ECF No. 184–6), all of whom deny being witness to or being personally involved in the January 6, 2019 unclothed search of Plaintiff following the scan. In addition, Defendants Dohs and Moreno deny ordering the post-scan strip search. (ECF No. 184–5 at 3; ECF No. 184–6 at 4). Defendant Moreno also denies that he supervised Defendant Ceballos, as he was a yard officer. (ECF No. 184–6 at 3).

Defendants also submitted attorney Railey declaration (ECF No. 184–7) with excerpts of Plaintiff's deposition, which were later corrected by an errata filing (ECF No. 206). The corrected Statement of Undisputed Facts and the corrected compilation of excerpts from Plaintiff's deposition are filed as ECF No. 206 at 4–8 and ECF No. 206 at 10–52, respectively.

The moving Defendants acknowledge that their motion was not made on behalf of Defendant Ceballos (ECF No. 184–1 at 7 n.1), who has not appeared in this action and is not represented by the moving Defendants' counsel. However, they argue that "several of the grounds for summary judgment discussed herein apply equally to Defendant Ceballos. As such, summary judgment should be granted to all five Defendants in this matter." (*Id.*)

In his opposition to Defendants' motion filed on August 16, 2023 (ECF No. 203), Plaintiff argues that:

    (1)  Defendants are liable despite their lack of personal participation in the January 6, 2019 unclothed body search because they set in motion a series of events that led to the search (*id.* at 4–11);

    (2)  the unclothed body search at issue was unreasonable because Defendants lacked justification in performing the search (*id.* at 11–23); and

    (3)  Defendants are not entitled to qualified immunity (id. at 23–30).

In making his arguments in opposition, Plaintiff relies on his verified complaint[3] (ECF No. 43) and sworn declarations filed by Defendants with their motion (ECF No. 184).

In addition, pursuant to Local Rule 260(b), Plaintiff reproduced Defendants' Statement of Undisputed Facts and admitted that some of those facts are undisputed. (ECF No. 203 at 32–54).

In their Reply in support of their motion for summary judgment, Defendants argue that Plaintiff failed to establish a genuine dispute of a material fact as to moving Defendants' liability for the alleged unconstitutional search through personal involvement, supervisory liability, or by setting in motion a series of events that led to the search. (ECF No. 207 at 5–8). Defendants also argue that Plaintiff failed to present evidence that the search was unreasonable (*id.* at 8), that defendants had a reasonable justification to conduct unclothed body search (*id.* 9), and that Plaintiff failed to identify a case establishing that Defendants conduct was clearly unconstitutional that would defeat their entitlement to qualified immunity. (*Id.* at 9–10).

### B.   Plaintiff's Motion for Summary Judgment

Plaintiff also filed a Motion for Summary Judgment (ECF No. 170) with accompanying Statement of Undisputed Facts (ECF No. 171). Plaintiff states that his motion is supported by his verified complaint "as well as admissions, interrogatories of defendants, and documentation produced in discovery."[4]

Plaintiff argues that he is entitled to summary judgment because he was subjected to unreasonable searches on January 1, 2019, and January 6, 2019: "[A] reasonable jury could not determine . . . that the Defendants' justification for initiating several intrusive searches on

---

[3] A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence. *McElyea v. Babbitt*, 833 F.2d 196, 197–98 (9th Cir.1987) (*per curiam*).

[4] Plaintiff was "responsible for the filing of all evidentiary documents cited in the moving papers." Local Rule 260(a). Several weeks after filing his motion for summary judgment, Plaintiff filed a collection of discovery documents labeled as Exhibits A–D. (ECF No. 175). Even though nothing in this filing states that these were filed in support of Plaintiff's Motion for Summary Judgment (ECF No. 170), the exhibit references in the motion appear to match the exhibits and documents in this filing (ECF No. 175), and the Court will treat it as such.

January 6, 2019 was reasonable. It is Defendants' position that the searches of Plaintiff's person on January 1, 2019 and January 6, 2019, were justified . . ." (ECF No. 170 at 9.)

In their response (ECF No. 194), Defendants make largely the same arguments as in their motion for summary judgment (ECF No. 184):

> (1) Plaintiff's references to the January 1, 2019 unclothed body search conducted by non-defendants and the January 6 low dose x-ray scan are not relevant to the issue in this case: whether the unclothed body search conducted by Defendant Ceballos on January 6, 2019 violated the Fourth Amendment;
>
> (2) Defendants Valencia, Moreno, Dohs, and Chavez did not participate in the January 6, 2019 unclothed body search at issue;
>
> (3) Plaintiff has no evidence that the search was unreasonable, and
>
> (4) Defendants are entitled to qualified immunity.

(ECF No. 194).

In his Reply (ECF No. 195), Plaintiff raises issues of admissibility of the evidence on which Defendants rely, such as Program Status Reports (PSRs) and Declaration of Defendant Moreno, ECF No. 184–6.

## III.    MOTION FOR JUDICIAL NOTICE

As a preliminary matter, the Court addresses motions and requests for judicial notice that relate to documents parties argue are relevant as to whether the search was reasonable. In support of their motion for summary judgment, Defendants asked the Court to take Judicial Notice of various regulatory changes to Cal. Code Regs. tit. 15 § 3287 regarding searches of inmates, cells, and property. (ECF No. 186). Plaintiff opposed that request. (ECF No. 203 at 24). Defendants also filed a Request to file a document under seal (ECF No. 232), and Plaintiff filed a Motion to File Confidential Memorandum (ECF No. 236).

### A.    Defendant's Request for Judicial Notice (ECF No. 186).

The Court may take judicial notice of "a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Defendants ask that the Court take judicial

7

notice of regulatory changes to Cal. Code Regs. tit. 15 § 3287 published California Regulatory Notice Register, a source whose accuracy cannot reasonably be questioned. *See Americans for Prosperity Found. v. Harris*, 809 F.3d 536, 538 (9th Cir. 2015) (taking judicial notice of proposed regulation published in California Regulatory Notice Register).

Accordingly, the Court recommends that Defendants' Request for Judicial Notice (ECF No. 186) be **GRANTED**.

**B.      Motions to File Confidential Memorandum under seal (ECF Nos. 232, 236).**

Defendants also move to file a Confidential Memorandum AGO 37–40 under seal. (ECF No. 232). The Court previously entered a Protective Order related to this Memorandum (ECF No. 165), in which the Court barred Plaintiff from maintaining physical possession of the confidential memorandum as disclosure of the information contained in the memorandum could "endanger the inmates that provided confidential information" and that Plaintiff "'cannot reasonably secure the confidential memorandum given the common living areas of a prison.'" (ECF No. 165 at 6–7 (citations omitted)). In the same Protective Order, the Court expressly permitted Defendants to move to seal the confidential memorandum in the event it is filed with the Court. (*Id.* at 8 n. 3.) Plaintiff makes essentially the same motion (ECF No. 236), asking the Court to file the same Confidential Memorandum under seal.

"Historically, courts have recognized a 'general right to inspect and copy public records and documents, including judicial records and documents.'" *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 & n.7 (1978)); *see also* Local Rule 141(a) ("Documents may be sealed only by written order of the Court, upon the showing required by applicable law."). Unless a particular court record is one "traditionally kept secret," a "strong presumption in favor of access" is the starting point for this Court's inquiry. *Kamakana*, 447 F.3d at 1178 (citations omitted). In order to overcome this strong presumption, a party seeking to seal a judicial record must meet the compelling-reasons standard by articulating compelling reasons, which are supported by specific facts, that outweigh the historical right of access and the public policies favoring disclosure. *Kamakana*, 447 F.3d at 1178–79. "'[C]ompelling reasons' must be shown to seal

judicial records attached to a dispositive motion. The 'compelling reasons' standard is invoked even if the dispositive motion, or its attachments, were previously filed under seal or protective order." *Id.* at 1179 (citing *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1136 (9th Cir. 2003) ("[T]he presumption of access is not rebutted where . . . documents subject to a protective order are filed under seal as attachments to a dispositive motion. The . . . 'compelling reasons' standard continues to apply.")).

The Court must "conscientiously balance" the "competing interests" of the public and the party seeking to seal the judicial record. *Kamakana*, 447 F.3d at 1179 (citation omitted). The determination as to what constitutes a "compelling reason" is within the Court's "sound discretion*." Center for Auto Safety v. Chrysler Group, LLC*, 809 F.3d 1092, 1097 (9th Cir. 2016) (citation omitted). Examples of compelling reasons include where a record might "become a vehicle for improper purposes," such as to "gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Kamakana*, 447 F.3d at 1179.

Here, compelling reasons exist to file the Confidential Memorandum under seal. As the Court previously found when entering a protective order:

> First, the Court finds that Defendants have shown particularized harm if the memorandum is allowed to be disclosed to the public. "The confidential memorandum summaries [sic] a conversation between an inmate informant and a correctional officer regarding a murder plot on an unidentified inmate and gang activity on the facility. The memorandum also addresses the actions taken by correctional officers to investigate that plot." (ECF No. 151–1, p. 3). Defendants claim that disclosure of the information contained in this memorandum "could have a number of adverse effects, including discouraging inmates and staff from coming forward and openly participating in CDCR investigations; causing harm to other inmates, prison officials and employees; or educating inmates as to CDCR investigatory methods." *(Id.)*. While the Court does not agree that all of these concerns are well-founded, such as the disclosure of general investigative methods, it is concerned that the specific contents of the memorandum pose colorable safety and security concerns. Specifically, the memorandum refers (albeit in redacted form) to a confidential informant about a potential murder plot. Accordingly, the Court finds that Defendants raise specific and legitimate safety and security concerns.

(ECF No. 165 at 6). The same specific and legitimate safety and security concerns that justified entering a protective order also justify filing under this document under seal and outweigh the interests of the public.

Accordingly, the Court recommends GRANTING both the Defendants' and Plaintiff's Motions to file Confidential Memorandum AGO 37–40 under seal. (ECF Nos. 232, 236).

## IV.   ANALYSIS OF MOTIONS FOR SUMMARY JUDGMENT

### A.   Legal standards

#### 1.   Summary Judgment

A party may move for summary judgment on a claim or defense. Fed. R. Civ. P. 56(a). Summary judgment in favor of a party is appropriate when there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Albino v. Baca (Albino II)*, 747 F.3d 1162, 1169 (9th Cir. 2014) (en banc) ("If there is a genuine dispute about material facts, summary judgment will not be granted."). A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). If the moving party moves for summary judgment on the basis that a material fact lacks any proof, the Court must determine whether a fair-minded jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on

which the jury could reasonably find for the plaintiff."). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322. Additionally, "[a] summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

In reviewing the evidence at the summary judgment stage, the Court "must draw all reasonable inferences in the light most favorable to the nonmoving party." *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011). It need only draw inferences, however, where there is "evidence in the record . . . from which a reasonable inference . . . may be drawn;" the court need not entertain inferences that are unsupported by fact. *Celotex*, 477 U.S. at 330 n. 2 (citation omitted). Additionally, "[t]he evidence of the non-movant is to be believed." *Anderson*, 477 U.S. at 255.

In reviewing a summary judgment motion, the Court may consider other materials in the record not cited to by the parties, but is not required to do so. Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001).

## 2.   Fourth Amendment Unreasonable Searches

The Fourth Amendment prohibits only unreasonable searches. *Bell v. Wolfish*, 441 U.S. 520, 558 (1979); *Byrd v. Maricopa County Sheriff's Office*, 629 F.3d 1135, 1140 (9th Cir. 2011); *Michenfelder v. Sumner*, 860 F.2d 328, 332 (9th Cir. 1988). The reasonableness of the search is determined by the context, which "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails." *Bell*, 441 U.S. at 559. Factors that must be evaluated are "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Id.*; *Bull v. City and County of San Francisco*, 595 F.3d 964, 972 (9th Cir. 2010) (*en banc*).

The Fourth Amendment applies to the invasion of bodily privacy in prisons and jails. *Bull*, 595 F.3d at 974–75. "[I]ncarcerated prisoners retain a limited right to bodily privacy." *Michenfelder*, 860 F.2d at 333. The United States Court of Appeals for the Ninth Circuit has long recognized that "[t]he desire to shield one's unclothed figure from view of strangers, and

11

particularly strangers of the opposite sex, is impelled by elementary self-respect and personal dignity." *York v. Story*, 324 F.2d 450, 455 (9th Cir. 1963); *see also Michenfelder*, 860 F.2d at 333 (same). "The [Supreme] Court [has] obviously recognized that not all strip search procedures will be reasonable; some could be excessive, vindictive, harassing, or unrelated to any legitimate penological interest." *Michenfelder*, 860 F.2d at 332. Nevertheless, the prisoner "bears the burden of showing that [prison] officials intentionally used exaggerated or excessive means to enforce security." *Id.* at 333.

## B.   Undisputed facts

Based on Plaintiff's admissions to Defendant's Statement of Undisputed Facts (ECF No. 203 at 32–54), the Court finds that the following facts are undisputed:

- In January 2019, Plaintiff was housed at North Kern State Prison, Facility A, Building 2, Cell 106. (ECF No. 203, at 32; ECF No. 184-2, p. 2)

- On January 1, 2019, an inmate informed correctional staff about a murder plot against an unknown inmate. That inmate also informed officers that responding correctional staff would be targeted. (ECF No. 203, at 33; ECF No. 184-2, p. 2)

- On January 1, 2019, correctional officers conducted a systematic search of all cells in Facility A, Building 2 and unclothed body search of the building's inmates. (ECF No. 203, at 33-34; ECF No. 184-2, p. 2)

- Plaintiff was subjected to an unclothed body search on January 1, 2019 and Plaintiff's cell was also searched on January 1, 2019.  (ECF No. 203, at 38; ECF No. 184-2, p. 3)

- On January 6, 2019, correctional officers conducted a mass search of Facility A, Building 2. As a Program Sergeant, Defendant Moreno supervised the search. (ECF No. 203, at 40; ECF No. 184-2, p. 3)

- On January 6, 2019, Defendant Valencia approached Plaintiff's cell and directed Plaintiff to submit to a strip search. (ECF No. 203, at 40).

- Plaintiff stripped down to his underwear, but declined to take off his boxer shorts. (ECF No. 203 at 40)

- After Plaintiff refused to remove his boxers, Defendant Valencia summoned his supervisor, Defendant Moreno, for assistance. (ECF No. 203, at 41).

- Defendant Moreno ordered Plaintiff to submit to an unclothed body search. (ECF No. 203 at 41)

- Plaintiff again refused to remove his boxer shorts. (ECF No. 203, at 41)

- Defendants Valencia, Dohs, and Chavez escorted Plaintiff from Facility A Building 2 to the Facility A gymnasium and placed Plaintiff in a holding cell. (ECF No. 203, at 43).

- All five defendants were present in the Facility A gymnasium while Plaintiff was in the holding cell. (ECF No. 203, at 43–44).

- Defendant Ceballos ordered Plaintiff to submit to an unclothed body search after Plaintiff was placed in the holding cell. Plaintiff refused to submit to the search. (ECF No. 203, at 44).

- Defendants Chavez, Valencia, Ceballos, and Dohs escorted Plaintiff to the Facility A visiting area. (ECF No. 203, at 45).

- All five defendants were present in the Facility A visiting area when Plaintiff was processed through the low dose xray body scanner. (ECF No. 203, at 46).

- When Plaintiff was processed through the low dose x-ray body scanner he was clothed with a t-shirt, boxer shorts, and shower sandals. (ECF No. 203, at 46)

- After Plaintiff was scanned by the low dose x-ray body scanner, Plaintiff was escorted back to the Facility A gymnasium holding cell. (ECF No. 203, at 46–47).

- After Plaintiff was placed back in the holding cell, Defendants Dohs, Valencia, Chavez, and Moreno left the gymnasium. (ECF No. 203, at 47).

- After the other Defendants disbursed, Plaintiff was alone in the Facility A gymnasium with Defendant Ceballos. (ECF No. 203, at 47)

- According to Plaintiff, Defendant Ceballos offered to send Plaintiff back to his cell if he consented to an unclothed body search. (ECF No. 203, at 47)

- Plaintiff submitted to an unclothed body search. (ECF No. 203, at 47)

- At the time of the unclothed body search, only Plaintiff and Defendant Ceballos were inside the Facility A gymnasium. (ECF No. 203, at 48).

- After submitting to the unclothed body search, Plaintiff was permitted to return to his cell. (ECF No. 203, at 50).

- Plaintiff was not physically harmed because of the January 6 search. (*Id.* at 52).[5]

In addition, in responding to Plaintiff's Statement of Undisputed Facts, Defendants also agree, in relevant part, it is undisputed that "After Plaintiff Hardy was X-rayed by defendants

---

[5] Although Plaintiff disputed several items on the Defendants' Statement of Undisputed Facts and raised a variety of evidentiary objections (ECF No. 203 at 32–54), e.g., "Objection. Assumes facts that are not in evidence" (*Id.* at 39), most of these disputes are not material. They are not relevant to the determination of the issues before the Court and therefore, Plaintiff's objections (ECF No. 203 at 32–54) and Defendants' arguments in reply (ECF No. 207 at 2–3) do not need to be addressed.

on January 6th, 2019, he was placed in the gym holding cell where he was supervised by Defendant Ceballos and subjected to an unclothed body search." (ECF No. 194–2 at 6).

### C.  Moving Defendants' Lack of Participation in the Relevant Search

Moving Defendants' first basis for summary judgment is that they did not participate in the June 6, 2019 unclothed body search, which was done solely by defaulting defendant Ceballos without knowledge of or direction from the Moving Defendants.

As to direct personal participation, as detailed above, the parties agree that none of the moving Defendants were in the gym when Defendant Ceballos conducted the search at issue. In support, Defendants filed sworn declarations of Defendant Chavez (ECF No. 184–3), Defendant Valencia (ECF No. 184–4), Defendant Dohs (ECF No. 184–5), and Defendant Moreno (ECF No. 184–6), all of whom unequivocally deny being a witness to or being personally involved in the January 6, 2019 unclothed search of Plaintiff following the scan.

Plaintiff does not dispute these facts, and agrees that Defendant Ceballos was alone in conducting the January 6 unclothed body search.  However, relying on *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)), Plaintiff argues (ECF No. 203 at 7) that Defendants indirectly set "in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Preschooler II*, 479 F.3d at 1183 (quoting *Johnson*, 588 F.2d at 743). Plaintiff argues that by demanding the unclothed search before the scan, Defendants Moreno and Valencia set in motion the events that resulted in an eventual unclothed search by Defendant Ceballos after the scan. (ECF No. 203 at 8).

The Court agrees with Defendants.  The mere fact that Defendants Moreno and Valencia demanded an unclothed search before the scan is insufficient to establish liability for the search following the scan.  Plaintiff has not presented any evidence that Defendant Moreno and Valencia directed the unclothed search, were aware that their actions would cause Defendant Ceballos to conduct that search, or made any demands for a further search after the body scan.  Moving Defendants deny knowing about or directing that search.  Instead, it is undisputed that after the scan, Plaintiff was escorted back to the gym, at which point the moving Defendants left to continue the mass search of the building. (ECF No. 206 at 41–45).

14

1    Plaintiff next argues that Defendant Moreno should be liable for the unclothed search

2    by Defendant Ceballos because, according to Plaintiff, Defendant Moreno supervised

3    Defendant Ceballos.  In support of this argument, Plaintiff first argues that Defendant Moreno

4    supervised Defendant Chavez, who was a yard officer.  Thus, because Defendant Ceballos was

5    also a yard officer, Defendant Moreno must have also supervised Defendant Ceballos. (*See*

6    Plaintiff's Opposition, ECF No. 203 at 10; *see also id.* at 53–54, disputing Defendants' SUF

7    #50). Plaintiff then argues that Defendant Ceballos followed Moreno's instructions and assisted

8    in escorting Plaintiff to the visiting area for x-ray. (*See* Plaintiff's Opposition, ECF No. 203 at

9    10; *see also id.* at 48–50, disputing Defendants' SUF #43).

10    In response, Defendants point to Defendant Moreno's Declaration, which states that he

11    did not supervise Defendant Ceballos on January 6, 2019. (ECF 207 at 5, citing ECF No. 184–6

12    at ¶ 8). They also argue that because of the mass search, "some, but not all, staff members were

13    re-directed to assist in the search of building 2. (*See, e.g.*, ECF No. 184–4 at ¶ 5 (Defendant

14    Valencia was redirected from Facility D to Facility A to assist with the mass search); ECF No.

15    184–3 at ¶¶ 5, 6 (Defendant Chavez was directed to assist in the mass search of Building 2)."

16    (ECF No. 207 at 5).

17    While Plaintiff cites evidence that both Defendants Chavez and Ceballos were yard

18    officers on January 6, 2019, and that Chavez was supervised by Defendant Moreno, Plaintiff

19    cites no evidence that Defendant Moreno was also supervising Defendant Ceballos and in light

20    of Defendant's Moreno declaration, such inference is not warranted. Defendant Moreno was

21    not a yard supervisor; he was the programming Sergeant at Facility A. (ECF No. 184–6 at 2).

22    While he supervised Defendant Chavez that day, who was a yard officer, it does not follow that

23    Defendant Moreno was supervising all yard officers on duty that day.

24    Next, Plaintiff argues (ECF No. 203 at 49) that he "states in his complaint that

25    Defendant Moreno was actively seeking to house Plaintiff in administrative segregation for

26    refusing to fully disrobe. (See Doc. No. 184–7, exhibit "A," depo. transcript at p. 99, 11–17)."

27    Plaintiff's citation is to a page from his deposition and the referenced lines state the following

28    answer:

15

> You know, I think for a time -- for a time it was just me and Officer Ceballos inside of the gym. I can remember after Sergeant Moreno stated to the officers start packing my stuff, he went somewhere, you know, and -- and in my mind he went to try to complete the process of having me processed for administrative segregation placement. So there was a time that it was just me and Defendant Ceballos inside of the gym.

(ECF No. 184–7 at 37, 11–18). Nothing in this testimony suggests that Defendant Moreno supervised Defendant Ceballos or ordered him to conduct the unclothed body search.

Plaintiff then asserts (ECF No. 203 at 10, 49–50) that "Defendant Ceballos followed the instructions of Defendant Moreno in escorting Plaintiff to and from the X-ray body scanner, and was thus under Moreno's supervision. (See Complaint; Doc No. 184–2, Defendants' undisputed fact No. 28, 29, 30, 32, 34, 36)." However, Plaintiff's complaint does not contain any allegations that Defendant Moreno gave instructions to Defendant Ceballos or that Ceballos followed them. (*See generally* ECF No. 43). In fact, on several occasions, Plaintiff's complaint describes Defendant Ceballos as "interjecting" himself into the proceedings, without any apparent invitation or orders. (ECF No. 43 at 11 ("Defendant Ceballos then interjected that Plaintiff would be charged . . ."); ECF No. 203 at 8–10 ("When Plaintiff asserted his privacy, he was seized and taken to a gym where he encountered Defendant Ceballos. (Compl. at p. 7). Defendant Ceballos immediately interjected himself into the conduct of the answering defendants by threatening Plaintiff . . .")). And contrary to his arguments in opposition, Plaintiff alleged in his complaint that Defendant Moreno ordered Defendant Chavez—not Defendant Ceballos—to take him to the scan: "At that point, Defendant Moreno ordered CO Chavez to handcuff Plaintiff and escort him to the visiting area where he was ran through a 'low dose' X-ray body scanner." (ECF No. 43 at 11).

Plaintiff's reference to Defendants' Undisputed Facts No. 28, 29, 30, 32, 34, 36, ECF No. 184–2, also fails to show that Defendant Moreno instructed Defendant Ceballos to conduct the January 6 unclothed body search.  Those undisputed facts state:

> 28. Defendants Valencia, Dohs, and Chavez escorted Plaintiff from Facility A Building 2 to the Facility A gymnasium and placed Plaintiff in a holding cell.

16

29. All five defendants were present in the Facility A gymnasium while Plaintiff was in the holding cell.

30. Defendant Ceballos ordered Plaintiff to submit to an unclothed body search after Plaintiff was placed in the holding cell. Plaintiff refused to submit to the search.

32. Defendants Chavez, Valencia, Ceballos, and Dohs escorted Plaintiff to the Facility A visiting area.

34. All five defendants were present in the Facility A visiting area when Plaintiff was processed through the low dose xray body scanner.

36. After Plaintiff was scanned by the low dose x-ray body scanner, Plaintiff was escorted back to the Facility A gymnasium holding cell.

(ECF No. 203 at 43–47). None of these undisputed facts show that Defendant Moreno gave any orders or instructions to Defendant Ceballos, either to escort Plaintiff to and from x-ray, or to search Plaintiff after the scan.

Thus, Plaintiff failed to plead or present any evidence that would create a genuine issue of material fact as to whether Defendant Moreno is liable based on directing Defendant Ceballos to conduct the January 6 unclothed body search.

Accordingly, the Court finds that the material facts are undisputed that the four moving Defendants—Moreno, Chavez, Valencia, and Dohs—did not directly or indirectly violate Plaintiff's Fourth Amendment rights by conducting an unclothed search of Plaintiff, following a body scan, on January 6, 2019.

D.    **Reasonableness of the search**

Moving Defendants next argue in the alternative that, based on undisputed facts, the unclothed search that Defendant Ceballos conducted of Plaintiff January 6, 2019 after the x-ray body scan was reasonable and did not violate the Fourth Amendment.[6]

---

[6] Given the Court's recommendation regarding the lack of participation by the Moving Defendants, the Court could choose not to address Defendants' alternate arguments based on the purported reasonableness of the search. However, the pending motion for default judgment as to

17

Defendants argue that the January 6 unclothed body search was neither vindictive nor harassing. It is undisputed that Plaintiff never had a previous negative interaction with any defendant. (ECF No. 203, at p. 52). It is also undisputed that searches of inmates were required pursuant to a modified program order in response to discovery of a murder plot against an unidentified inmate. Thus, Defendants argue "[t]he body scan and Defendant Ceballos's subsequent strip search were reasonable measures to take to confirm that Plaintiff was not concealing contraband on his person in light of the ongoing mass search and Plaintiff's refusal to comply with Defendants [sic] lawful orders." (ECF No. 184-1, at p. 15). Defendants also argue that there was no policy in effect at the time that stated that that an x-ray body scan was duplicative of any other search. Finally, Defendants argue that the location in the gymnasium waws private and the search was properly conducted.

In response, Plaintiff argues that the PSR dated January 6, 2019 did not require unclothed searches. Plaintiff notes that the box for "unclothed body searches prior to escort were not mandated," was not checked. (ECF No. 170 at 11; *see also* ECF No. 175 at 64–68). Plaintiff provides for comparison a PSR from another California facility, where, in contrast, that box was checked. (ECF No. 175 at 69). He next argues that any penological objective was satisfied by the unclothed body search on January 1, 2019. He argues that defendants have failed to put forth any justification for the January 6 unclothed search, in light of the earlier unclothed search of January 1 and the x-ray body scan of January 6 immediately before Defendant Ceballos' unclothed search of Plaintiff. He argues that there was no opportunity to obtain contraband after the first unclothed body search on January 1. And he argues that the xray body scan is an alternative to an unclothed body search, so there was certainly no justification for a second unclothed search following that scan.

In reply, Defendants argue that they provided a justification for the search, stating "the justification for the search at issue was the investigation into the murder plot of an unidentified inmate." (ECF No. 207, at p. 9).

---

Defendant Ceballos regarding that search, the Court recommends evaluating this alternate argument as well.

18

With these arguments in mind, the Court turns to caselaw regarding the reasonableness of a search following another search.

To begin with, in the case of *Michenfelder v. Sumner*, 860 F.2d 328, 332–333 (9th Cir. 1988) the Ninth Circuit upheld the district court's finding that a prison's policy of routine strip searches of prisoners housed in the maximum security unit was reasonable.  In assessing the reasonableness given the frequency of the searches, the Ninth Circuit stated as follows:

> The frequency of strip searches in Unit Seven appears, from this record, to be very high. Prisoners are searched both coming and leaving their cells, even when traveling only within the unit while under escort and in chains at all times. However, ***so long as a prisoner is presented with the opportunity to obtain contraband or a weapon*** while outside of his cell, a visual strip search has a legitimate penological purpose. *Turner v. Safley,* 107 S.Ct. at 2261. Michenfelder, who bears the burden of showing NSP officials intentionally used exaggerated or excessive means to enforce security, *see Soto v. Dickey,* 744 F.2d 1260, 1271 (7th Cir.1984); *Bell v. Wolfish,* 441 U.S. at 561–62, 99 S.Ct. at 1885–86, has failed to demonstrate that the searches at issue here were conducted in the absence of such opportunities.

<u>Id.</u> at 332–333 (emphasis added); *see also id.* at 333 ("In addition, testimony and physical evidence before the district court substantiated several incidents in which contraband and homemade weapons were confiscated from Unit Seven inmates. Though Shift Lieutenant Koon testified that no strip search in Unit Seven had produced a hidden weapon, he also testified that the policy was "the only thing that has prevented that from happening.").  Thus, while the Ninth Circuit has upheld the reasonableness of frequent searches of inmates, it did so by finding that Plaintiff in that case had not shown the inability to obtain contraband between searches.  Moreover, unlike here, the Court in that case placed large weight on the fact that the prisoners at issue were high security risks.  *Id.* at 333 ("The fact that Unit 7 houses the state's most difficult prisoners gives rise to a legitimate governmental security interest in procedures that might be unreasonable elsewhere.").

The Court next addresses the two decisions relied upon by District Judge Drozd in allowing Plaintiff's claim in this case to proceed.  In the case of *Turkmen v. Hasty,* 789 F.3d 218, 260–261 (2d Cir. 2015), *judgment rev'd in part, vacated in part sub nom. Ziglar v. Abbasi,* 582 U.S. 120 (2017), the Second Circuit held that Plaintiffs adequately alleged a Fourth Amendment claim, which was not subject to qualified immunity, based on repeated and redundant searches of inmates:

> Plaintiffs allege that the 9/11 detainees at the MDC were strip searched upon arrival, and again after they had been escorted in shackles and under continuous guard to the ADMAX SHU. They were also strip searched every time they were taken from or returned to their cells, including after non-contact attorney visits, when "physical contact between parties was prevented by a clear partition," OIG Report at 123, and when being transferred from one cell to another. Benatta was strip searched on September 23, 24, and 26 of 2001, even though he was not let out of his cell on any of those days. Numerous strip searches were documented in a "visual search log" that was created for review by MDC management, including Hasty. Compl. ¶ 114 (internal quotation marks omitted).

*Id.* at 260.  In upholding the Fourth Amendment claim, the Second Circuit stated "[t]he foregoing allegations . . . are sufficient to establish at this stage of the litigation that Hasty and Sherman were personally involved in creating and executing a strip-search policy that was not reasonably related to legitimate penological interests. . . . . Under that policy, the MDC ***Plaintiffs were strip searched when there was no possibility that they could have obtained contraband*.**"  *Id.* at 260-61 (emphasis added).

The Third Circuit also addressed this issue in *Parkell v. Danberg*, 833 F.3d 313 (3rd Cir. 2016), in which it reversed a grant of summary judgment on a Fourth Amendment claim because Plaintiff presented sufficient evidence that a search policy was unreasonable, explaining:

> [T[he particular search policy enforced in C–Building is not reasonably related to VCC's legitimate interests in detecting and deterring contraband, particularly given the significant intrusiveness of the thrice-daily visual body-cavity searches.

The State Defendants are unable to articulate a single plausible theory as to how inmates in isolation in C–Building would have three-daily opportunities to smuggle in contraband from outside their cells or use unsupervised time in their locked cells to transform a harmless object into something dangerous. And we cannot imagine a plausible scenario ourselves. . . . He therefore had few, if any, opportunities to obtain contraband—and certainly not three opportunities per day—which distinguishes this case from the searches in Bell that took place after visitations involving in-person contact. . . . Arguably, it does magnify the State Defendants' security interest, insofar as inmates who have already broken prison rules may be more likely to seek and utilize dangerous contraband. But the reasonable relationship to the search policy is still missing.

When dangerous inmates are completely isolated in C–Building, it is the isolation that prevents the smuggling of contraband. Thrice-daily bodily searches have little, if any, value in that context unless the period of complete isolation has somehow been interrupted. . . . In <u>Bell</u>, the probability that an inmate would obtain contraband during a visitation was low but still sufficient to justify the search policy. But here, ***the probability is vanishingly small that an inmate locked in a stripped-down isolation cell in C–Building, once searched, could then obtain contraband*** during a subsequent eight-hour period involving no human contact. As such, the intrusive thrice-daily searches are not a reasonable means of advancing VCC's legitimate interest in detecting and deterring contraband.

*Id.* at 327–330 (emphasis added). Again, the Court's decision turned on whether there was an opportunity for the Plaintiff to obtain contraband between searches.

Defendants also cite to several district court cases. Defendants cite *Eckard v. Thomas*, No. C19-431 JCC-MLP, 2019 WL 5005226 (W.D. Wash. Aug. 9, 2019), recommendation adopted 2019 WL 4965508 (Oct. 8, 2019), in which the Court granted summary judgment to defendants on a claim that correctional officers violated the Fourth Amendment by conducting an unclothed body search after plaintiff was subject to search by a body scanner and a metal detector with negative results. However, in that case, Defendants presented evidence that "[A] strip search is warranted after that inmate is scanned by the Rapiscan scanner and Boss metal detector because the Rapiscan scanner does not always detect contraband on a person, in part because it only scans the outside of the body, and the Boss metal detector cannot detect non-metallic contraband." (Dkt. # 18 (Supp. Thomas Decl.) at ¶ 3.)"). *Id.* at *3. Thus, the Court again relied on evidence that the earlier search in that case was not sufficient to detect contraband, thus justifying the later search for contraband.

21

Defendants also cite the case of *Williams v. Kernan*, No. 17-cv-03538-YGR (PR), 2019 WL 6036710 (N.D. Cal. Nov. 14, 2019), in which the Court granted summary judgment to defendants on claim that correctional officers violated the Fourth Amendment by conducting an unclothed body search, where officers had already performed a clothed body search with a handheld metal detector.  However, Plaintiff in that case challenged the second search based on the presence of a female officer, and not on the ground that it was redundant of the earlier search.  Although not analyzed, the Court also cited evidence that the earlier search was not sufficient.  *Id.* at *9 ("Although the clothed body search with a handheld metal detector had negative results for contraband, Brown was not convinced that Williams was not concealing contraband on his person.").  Thus, nothing in this case supports Defendants' position that repeated redundant searches are reasonable.

Similarly, the Court in *Hunt v. Martinez*, No. 2:18-cv-3025 JAM KJN P, 2020 WL 564815 (E.D. Cal. Feb. 5, 2020), recommendation adopted 2020 WL 1433000 (Mar. 24, 2020) granted a motion to dismiss a claim where inmate was subject to strip search in medical facility prior to being transported to an outside medical appointment despite being subject to a strip search and search by a metal detector prior to leaving his housing unit.  However, while the facts indicate that multiple searches were conducted, the searches were not challenged as being redundant or excessive, and the Court did not address that issue, or whether there was a basis for subsequent searches.

While the facts in these cases differ, their holdings regarding repeated searches are largely the same:  where there is an opportunity to obtain contraband between searches, repeated searches may be reasonable.  However, where there is no opportunity to obtain contraband between searches, repeated searches may be excessive and violate the Fourth Amendment.

We turn now to the evidence presented regarding whether Plaintiff had any opportunity to obtain contraband between the body scan and the unclothed body search on January 6, 2019. Notably, Defendants do not address this point in their papers.  Defendants do not argue or point to any evidence that Plaintiff had an opportunity to obtain contraband between the body scan

and unclothed search.  They do not argue that the x-ray scanner was insufficient to detect contraband.  In fact, they do not point to any justification for the unclothed search, separate and apart from the x-ray body scan.  Instead, Defendants group both the body-scan and unclothed search together and say there was justification for both of them together.  *Id.* at 184-1, at p. 15) ("The body scan and Defendant Ceballos's subsequent strip search were reasonable measures to take to confirm that Plaintiff was not concealing contraband on his person in light of the ongoing mass search and Plaintiff's refusal to comply with Defendants lawful orders.").

In fact, Defendants' submitted evidence supports Plaintiff's position that the unclothed search was not necessary or justified.  In particular, defendant Moreno's Declaration states, "The low dose x-ray body scanner would detect if Plaintiff was concealing contraband. . . . After Plaintiff was processed through the low dose x-ray body scanner, I ordered Plaintiff to be returned to the Facility A gymnasium holding cell until the mass search of building 2 was complete. Upon completion of the mass search, Plaintiff was permitted to return to his cell." (ECF No. 184-5, at p. 3); *see also* ECF 184-2, at p. 3-4 ("Moreno sought to process Plaintiff through the scanner to ensure that Plaintiff was not concealing contraband on his person."). Thus, according to Defendants' own evidence, the x-ray body scan was sufficient to determine if Plaintiff was concealing contraband, and Plaintiff was put in the gymnasium holding cell to wait until the rest of the building had been searched--and *not* for the purpose of conducting another unclothed search of Plaintiff.

Similarly, Defendants repeatedly say they did not authorize or direct Defendant Ceballos' unclothed search; rather "the undisputed evidence shows that Defendant Ceballos, acting unilaterally, conducted the unclothed body search at issue."  (ECF No. 207, at p. 6) *see also* ECF. No. 184-5, at p. 3 ("At no point did I order or witness Plaintiff submit to an unclothed body search on 12 January 6, 2019.").  Again, and not surprisingly given that he is a defaulting party, there is no explanation or justification presented by Defendant Ceballos as to why he conducted the unclothed search after the x-ray body scan.

The Court next looks to the applicable regulations to see if they shed light on the purported justification for the unclothed body search following the x-ray scan of Plaintiff.  As

23

explained above, in finding that Plaintiff stated a cognizable Fourth Amendment claim in this case, the district judge considered the September 1, 2017 Notice of Proposed Regulatory Action for Cal. Code Regs. tit 15 § 3287(b), (c) at 3, cited by Plaintiff in his complaint (ECF No. 43 at 12, 22), which proposed incorporating low dose full body x-ray scanners as a form of contraband detection techniques.  (ECF No. 42, at p. 22).  In their motion for summary judgment, Defendants counter that this proposed regulation was not in place as of Plaintiff's search.  (ECF No. 184-1, at p. 17).  Instead, revised regulations addressing the use of low-dose full-body x-ray scanners were proposed in February, 2020, and implemented in July 1, 2021.

While it is relevant that the regulations cited by the district judge had not been implemented at the time of the search, that fact does not render the second January 6 search reasonable or constitutional.  Defendants do not contend in their motion that the body scanner was insufficient for detecting contraband, nor do any of the regulations, proposed or implemented, state that.  Rather, the proposed and implemented regulations provide guidance for the use of body-canners as a method to search for contraband.  (ECF No. 43 at 26) ("The Department utilizes a variety of search options on inmates such as visual inspections, clothed body searches (pat down), visual unclothed body searches and metal detectors. The Department intends to increase these options by incorporating Ion scanners and low dose x-ray (full body scanners) to be used on inmates.").

Accordingly, the Court recommends finding that Defendants are not entitled to summary judgment on the alternate ground that the June 6, 2019 unclothed search by Defendant Ceballos was reasonable and did not violate Plaintiff's Fourth Amendment rights.

### E.    Qualified Immunity

Defendants also argue, in the alternative, that they are entitled to qualified immunity.  "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)(*internal citations omitted*).  For purposes of qualified immunity, "[a] right is clearly established when it is sufficiently clear that every reasonable official would have

understood that what he is doing violates that right." *Rivas-Villegas v. Cortesluna*, 142 S.Ct. 4, 7 (2021). While case law directly on point is not required for a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* at 7-8.

Defendants argue that they are entitled to qualified immunity due to (1) their lack of participation in the search, and (2) the reasonableness of the search.

As to the first argument, the Court has recommended granting summary judgment in favor of non-moving defendants based on their lack of participation. Thus, the Court need not address qualified immunity as to this issue.

However, construing all disputed facts in favor of Plaintiff at this stage in proceedings, Defendants would not be entitled to qualified immunity based on the purported reasonableness of the search itself.

As discussed at length above, courts looking at the reasonableness of repetitive searches uniformly look to whether there was any chance that the person being searched could have concealed or obtained contraband. *See, e.g., Michenfelder v. Sumner*, 860 F.2d 328, 332–333 (9th Cir. 1988) (upholding ruling that repeat searches were reasonable "so long as a prisoner is presented with the opportunity to obtain contraband or a weapon"); *Turkmen v. Hasty,* 789 F.3d 218, 260–261 (2d Cir. 2015), *judgment rev'd in part, vacated in part sub nom. Ziglar v. Abbasi,* 582 U.S. 120 (2017) (finding Plaintiffs adequately alleged a Fourth Amendment claim, which was not subject to qualified immunity, based on repeated and redundant searches where "Plaintiffs were strip searched when there was no possibility that they could have obtained contraband."); *Parkell v. Danberg*, 833 F.3d 313 (3rd Cir. 2016) (reversing a grant of summary judgment on a Fourth Amendment claim because Plaintiff has presented sufficient evidence that a search policy was unreasonable, where "the probability is vanishingly small that an inmate locked in a stripped-down isolation cell in C–Building, once searched, could then obtain contraband").

As described above, Defendants have not argued or put forth any evidence that Plaintiff had an opportunity to conceal or obtain contraband after the x-ray scan. On the contrary, they

have produced evidence that the x-ray scan should have detected any contraband without an additional unclothed search, and that Plaintiff lacked an opportunity to obtain contraband after the x-ray body scan.

Thus, based on the evidence presented on summary judgment, Defendants are not entitled to summary judgment based on qualified immunity.

**F.     Plaintiff's Motion for Summary Judgment**

For the same reasons discussed above, the Court also recommends denying Plaintiff's Motion for Summary Judgment (ECF No. 170).  As set forth above, the undisputed facts establish that the Moving Defendants did not participate or direct the January 6 unclothed body search, which is the search at issue in the case.

**V.     CONCLUSION AND ORDER**

Based on the foregoing, it is hereby **RECOMMENDED** that:

1.  Defendants' Request for Judicial Notice (ECF No. 186), Defendants' Request to file Under Seal (ECF No. 232), and Plaintiff's Motion to File Confidential Memorandum (ECF No. 236) be **GRANTED**;

2.  Motion for Summary Judgment filed by Defendants Moreno, Dohs, Valencia, and Chavez (ECF No. 184) be **GRANTED** and these Defendants dismissed from this action;[7] and

3.  Plaintiff's Motion for Summary Judgment (ECF No. 170) be **DENIED**.

\\\

\\\

---

[7] Moving Defendants also requested that summary judgment be granted in favor of defaulting party Defendant Ceballos, for the same grounds presented in the motion.  Setting aside the fact that Moving Defendants do not represent Defendant Ceballos, summary judgment would not be appropriate for Defendant Ceballos for the reasons in this order.  Specifically, the Court is recommending summary judgment be granted in favor of Moving Defendants because they were not involved in the June 6 unclothed search, whereas Defendant Ceballos was involved and indeed was the sole person who performed the search.  The Court has recommended rejecting Moving Defendants' alternate bases for the search based on the supposed reasonableness of the search and qualified immunity.

Following the District Judge's ruling on these Findings and Recommendations, the Court will address Plaintiff's pending motion for default judgment as to Defendant Ceballos.

These findings and recommendations are submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty days after being served with these findings and recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   __**June 12, 2024**__                      ___/s/ Erica P. Grosjean___
                                                        UNITED STATES MAGISTRATE JUDGE

27