1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

8
9
10

| | |
|---|---|
| KRISTIN HARDY,<br><br>                    Plaintiff,<br><br>v.<br><br>R. MORENO, *et al.*,<br><br>                    Defendants. | Case No. 1:21-cv-00327-KES-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS TO GRANT PLAINTIFF'S MOTION TO LIFT STAY AND ABEYANCE AND REQUEST FOR ENTRY OF JUDGMENT BY DEFAULT; AND<br><br>TO GRANT IN PART PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT CEBALLOS<br><br>(ECF No. 50, 244)<br><br>OBJECTIONS, IF ANY, DUE WITHIN 30 DAYS |

Kristin Hardy is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983.  Plaintiff claims that correctional officers Valencia, Moreno, Chavez, Dohs, and Ceballos violated his Fourth Amendment rights by conducting a strip search after a full-body scan without obvious justification.  (ECF Nos. 22, 42, and 43).

Defendants Valencia, Moreno, Chavez, and Dohs appeared (ECF No. 46) and were ultimately dismissed (ECF Nos. 237 and 241) after they prevailed on their Motion for Summary Judgment (ECF No. 184).

However, Defendant Ceballos—despite being served—has not appeared or otherwise responded to Plaintiff's claim against him. Plaintiff obtained a clerk's entry of default against Defendant Ceballos (ECF No. 48) and filed a motion for default judgment against Defendant Ceballos (ECF No. 50). The Court deferred ruling on Plaintiff's motion for default judgment until resolution of the claims against the other defendants. (ECF No. 237 at 2 n.1; ECF No. 241 at 3). With the claims against the other defendants dismissed (ECF Nos. 237 and 241), Plaintiff's motion for default judgment is now before the Court.

On April 7, 2025, Plaintiff also filed a motion to lift stay and abeyance and request for entry of judgment by default (ECF No. 244), asking that the Court rule on Plaintiff's motion for default judgment as to Defendant Ceballos now that the claims against the other defendants have been resolved.

As explained below, the Court will recommend that Plaintiff's motion to lift stay and abeyance and request for entry of judgment by default, (ECF No. 244) be **GRANTED**. The Court also recommends that Plaintiff's motion for default judgment against Defendant Ceballos (ECF No. 50) be **GRANTED IN PART**. The Court finds that default judgment should be entered against Defendant Ceballos on Plaintiff's Fourth Amendment claim for unreasonable search, and recommends that Plaintiff be awarded $5,000 in compensatory damages and $5,000 in punitive damages against Defendant Ceballos.

I.     BACKGROUND

A.     Procedural History

Plaintiff filed his original complaint on March 1, 2021. (ECF No. 1). Following a screening order, Plaintiff filed a First Amended Complaint (FAC) on April 21, 2021. (ECF No. 16). In the FAC, Plaintiff raised claims under the First and Fourth Amendments, alleging that he was subjected to an unreasonable strip search after a full-body scan.

Specifically, Plaintiff's FAC alleged that on January 6, 2019, Defendant Valencia opened Plaintiff's cell door and ordered Plaintiff to remove his clothing. Plaintiff asked Defendant Valencia what was going on and explained that he had just been subjected to a cell and unclothed body search five days before. Nevertheless, Defendant Valencia and Defendant

2

Moreno attempted to conduct an unclothed search of Plaintiff.  However, Plaintiff refused to remove all of his clothing for the search.  Plaintiff was escorted to the Facility "A" gymnasium and placed in a holding cage. Plaintiff then underwent a body scan in a full x/ray "low dose" body scanner.  No contraband was found.

After Plaintiff was x-rayed, he was escorted back to the gymnasium holding cage, where Defendant Ceballos refused to send Plaintiff back to his assigned housing unless Plaintiff submitted to an unclothed search, despite the fact that Plaintiff had just been searched via x-ray scanner.  Plaintiff eventually submitted to the unclothed search by Defendant Ceballos.  (ECF No. 18 at 3–4).

On May 7, 2021, the Court screened the FAC and issued Findings and Recommendations and recommending dismissing Plaintiff's complaint for failure to state a claim.  (ECF No. 18).  However, on November 16, 2021, then presiding District Judge, Dale A. Drozd, issued an Order Adopting Findings and Recommendations in part.  (ECF No. 22). While the Judge Drozd agreed that certain claims and defendants should be dismissed, he found that Plaintiff's FAC stated a Fourth Amendment claim based on Plaintiff's allegation that he was subjected to an unclothed search following a body scan, explaining:

> Low-dose scanners like the one used in the first January 6, 2019 search of plaintiff "scan the whole body in seconds, detecting the presence of contraband secreted or ingested inside the human body." Notice of Proposed Regulatory Action for Cal. Code Regs. tit 15 § 3287(b), (c) at 3. As such, according to at least a facial reading of California Regulations, "the use of this device eliminates the need for an inmate to be subject to an unclothed body search." Id. Yet, according to the allegations of plaintiff's complaint, immediately after plaintiff's full body was scanned and despite the fact that plaintiff was in the custody of the correctional officers after that body scan, he was subjected to an additional strip search without obvious justification. Several circuit courts have allowed inmates to pursue Fourth Amendment claims where, as here, the inmate was subjected to multiple searches despite having no opportunity to obtain contraband between inspections. *See Turkmen v. Hasty*, 789 F.3d 218, 261 n.44 (2d Cir. 2015) (strip searches where an inmate has had no opportunity to acquire contraband may be unnecessary and therefore such allegations are sufficient to state a constitutional claim) (citing *Hodges v. Stanley*, 712 F.2d 34, 35–36 (2d Cir. 1983)); *see also Parkell v.*

> *Danberg*, 833 F.3d 313, 329 (3d Cir. 2016) (denying summary judgment
> because a disputed issue of material fact existed regarding whether the strip
> search of the inmate was constitutionally reasonable where that inmate had no
> opportunity to procure contraband.).

(*Id.* at 3). Accordingly, the Judge Drozd found Plaintiff's FAC stated a cognizable Fourth Amendment claim for the unclothed search following the body scan on January 6, 2019, and ordered that Plaintiff's Fourth Amendment claim for unreasonable search against defendants Valencia, Moreno, Chavez, Dohs, and Ceballos in his FAC based on the unclothed search on January 6, 2019, proceed past screening. (*Id.* at 3).

The Court ordered service of the FAC, but Plaintiff nevertheless a Second Amended Complaint (SAC) on February 11, 2022.[1] (ECF No. 43). On March 7, 2022, Defendants Moreno, Chavez, Valencia, and Dohs answered. (ECF No. 46).

On January 27, 2022, the United States Marshals Service filed a return of service, indicating that Defendant Ceballos was personally served with the FAC. (ECF No. 37).[2] The Court also mailed Defendant Ceballos a copy of Plaintiff's Second Amended Complaint, and gave him a deadline of March 9, 2022, to respond. (ECF No. 42 at 3). Defendant Ceballos did not respond to either complaint. Accordingly, on March 18, 2022, at the request of Plaintiff (ECF No. 47), the Clerk of Court entered default against Defendant Ceballos. (ECF No. 48).

Plaintiff then filed a motion for default judgment against Defendant Ceballos on March 28, 2022 (ECF No. 50), which the Court ordered on April 22, 2022, to be held in abeyance until "judgment is appropriate for the remaining defendants or upon further order of the Court." (ECF No. 54 at 2).

**B.    Motion for Summary Judgment by Moreno, Chavez, Valencia, and Dohs**

On July 5, 2023, Defendants Moreno, Chavez, Valencia, and Dohs filed a motion for summary judgment. (ECF No. 184). They argued they did not participate in Defendant

---

[1] Plaintiff moved to amend his Complaint in an effort to "clean up" the First Amended Complaint and to remove the claims and defendants that had been dismissed. (ECF No. 41.) The Court granted Plaintiff leave to amend for this purpose only. (ECF No. 42.)

[2] Although the proof of service does not specifically indicate, the operative complaint at that time was the First Amended Complaint.

4

Ceballos' unclothed search of Plaintiff on January 6, 2019, were not present during that search, did not witness it, and did not order it. (ECF No. 184-1, at 11–12). In support of their motion, Defendants Moreno, Chavez, Valencia, and Dohs provided the following statement of facts:

On January 6, 2019, all inmates were to be subjected to a strip search based on a mass search of Facility A, but Plaintiff refused to remove his boxer shorts when ordered by Defendant Valencia. Defendant Moreno, as Defendant Valencia's supervisor, ordered Plaintiff to remove his boxers, but Plaintiff again refused. Defendant Moreno ordered Plaintiff to be taken to a holding cell in the Facility A gymnasium so Plaintiff could be processed through a low dose x-ray body scanner. When Plaintiff was taken to the holding cell, all five defendants were present. Defendant Ceballos ordered Plaintiff to take off his boxers, but Plaintiff refused.

Plaintiff was then processed through a low dose body scanner with all five Defendants present. After Plaintiff was scanned, he was returned to the gymnasium holding cell, and Defendants Moreno, Chavez, Valencia, and Dohs left, leaving Plaintiff and Defendant Ceballos alone in the gymnasium. Defendant Ceballos purportedly offered to send Plaintiff back to his cell if he submitted to an unclothed body search. Plaintiff complied and was subsequently allowed to return to his cell.

Each of the Defendants moving for summary judgment submitted a declaration under penalty of perjury stating Defendant Ceballos acted unilaterally and outside of their presence when he made Plaintiff submit to an unclothed body search after Plaintiff had already been searched by the body scanner.

Specifically, Defendant Moreno, who was a sergeant at the time of the incident, stated in his declaration:

- On January 6, 2019, I supervised Defendants Valencia, Dohs, and Chavez. I did not supervise Defendant Ceballos as he was a yard officer.
- After Plaintiff was processed through the low dose x-ray body scanner, I ordered Plaintiff to be returned to the Facility A gymnasium holding cell until the mass search of building 2 was complete. Upon completion of the mass search, Plaintiff was permitted to return to his cell.

5

- I did not order Defendant Ceballos to conduct a search of Plaintiff's unclothed body after Plaintiff was processed through the low dose body scanner. I was also not present in the Facility A gymnasium when any unclothed body search occurred.

(ECF No. 184-6, Moreno Decl. ¶ 8, 11, and 13).

Defendant Valencia stated:

- Per Defendant Moreno's instructions, I then escorted Plaintiff to the Facility A visiting center to be processed through the low dose x-ray body scanner. After Plaintiff was scanned by the low dose x-ray body scanner, I reported back to Facility A building 2 to continue with the mass cell searches. While I reported back to building 2, other officers escorted Plaintiff back to the Facility A gymnasium holding cell.

- At no time did I observe Plaintiff submit to an unclothed body search.

(ECF No. 184-4, Valencia Decl. ¶¶ 9-10).

Defendant Dohs stated:

- After Plaintiff was processed through the low dose body scanner, I again assisted Defendant Chavez in escorting Plaintiff back to the Facility A gymnasium holding cell until the mass search of Facility A, Building 2 was complete.

- At no point did I order or witness Plaintiff submit to an unclothed body search on January 6, 2019.

(ECF No. 184-5, Dohs Decl. ¶¶ 10 and 13).

Defendant Chavez stated:

- Per Defendant Moreno's instruction, I then escorted Plaintiff to the Facility A visiting center for processing through the low dose x-ray body scanner. After Plaintiff was processed through the low dose x-ray body scanner, I escorted Plaintiff back to the holding cell in the Facility A gymnasium before returning to the mass search of Facility A.

- At no time did I witness Plaintiff submit to an unclothed body search on January 6, 2019.

1    (ECF No. 184-3, Chavez Decl. ¶¶ 7-8).

2         After briefing was completed, on June 13, 2024, the Court issued Findings and

3    Recommendations, finding that undisputed evidence showed that the unclothed search

4    following the body scan was done solely by defaulting defendant Ceballos without knowledge

5    of or direction from the other defendants, and recommending that the Defendants Moreno,

6    Chavez, Valencia, and Dohs' motion for summary judgment be granted.  (ECF No. 237, at p.

7    14-17) ("Defendant Ceballos was alone in conducting the January 6 unclothed body search. . . .

8    Accordingly, the Court finds that the material facts are undisputed that the four moving

9    Defendants—Moreno, Chavez, Valencia, and Dohs—did not directly or indirectly violate

10   Plaintiff's Fourth Amendment rights by conducting an unclothed search of Plaintiff, following

11   a body scan, on January 6, 2019.").

12        This Court also recommended rejecting Defendants' alternative argument that

13   Defendant Ceballos's subsequent unclothed search was reasonable.  This Court found

14   Defendants failed to demonstrate any justification for Defendant Ceballos's subsequent search

15   and failed to point to any evidence that Plaintiff had an opportunity to obtain contraband

16   between the body scan and unclothed search.  (ECF No. 237 at 22-23).  This Court reasoned,

17   "Thus, according to Defendants' own evidence, the x-ray body scan was sufficient to determine

18   if Plaintiff was concealing contraband, and Plaintiff was put in the gymnasium holding cell to

19   wait until the rest of the building had been searched--and *not* for the purpose of conducting

20   another unclothed search of Plaintiff."  (*Id.* at 23).

21        On March 25, 2025, then-presiding District Judge Kirk E. Sherriff issued an Order

22   Adopting Findings and Recommendations in full, granting Defendants Moreno, Chavez,

23   Valencia, and Dohs' motion for summary judgment, and dismissing Plaintiff's claims against

24   Defendants Moreno, Chavez, Valencia, and Dohs from this action.  (ECF No. 241).  The

25   District Judge referred the case back to this Court for further proceedings on Plaintiff's motion

26   for default judgment against Defendant Ceballos.

27   \\\

28   \\\

7

### C.    Plaintiff's Motion for Default Judgment

In his motion for default judgment against defendant Ceballos filed on March 28, 2022 (ECF No. 50), Plaintiff asks the Court to enter a default judgment in the amount of $30,350. (ECF No. 50 at 3).  Plaintiff declares, under penalty of perjury, that the "value of humiliation/harm caused by multiple intrusive searches, and damages to future interest in parole by issuance of rule violation report ('RVR') # 6291044, dated 1–6–19, [is] $5,000."  (*Id.* at 2).  Plaintiff also states that the value of punitive damages is $25,000, "based on the degree of reprehensibility inherent in the facts of the case."  (*Id.*)  Plaintiff also asks for $350, which is based on fee to file this action.  (*Id.* at 3).

On January 9, 2023, Plaintiff filed a motion to amend his declaration in support of his motion for default judgment.  (ECF No. 139).  Plaintiff states he is requesting to amend his declaration "to not rely on the RVR as a theory of recovery for damages."  (*Id.* at 2).  This Court granted Plaintiff's motion to amend his declaration.  (ECF No. 140).  In his amended declaration, Plaintiff seeks "5,000 in compensatory damages based on the constitutional injury of subjecting plaintiff to a vindictive, harassing, excessive, and unreasonable search of his person; (B) 350.00$, which is plaintiff's cost associated with the filing of this civil action; (C) 25,000 in punitive damages, which plaintiff quantifies based on the degree of reprehensibility inherent in the facts of the case."  (ECF No. 139 at 3).

### D.    Plaintiff's Motion to Lift the Abeyance of his Motion for Default Judgment

On April 7, 2025, Plaintiff filed a motion to lift the abeyance of his motion for default judgment against Defendant Ceballos on the grounds that the remaining Defendants have been dismissed after Defendants Moreno, Chavez, Valencia, and Dohs's motion for summary judgment was granted.  (ECF No. 244).[3]

\\\

\\\

---

[3] On April 7, 2025, Plaintiff filed a notice of appeal.  (ECF No. 245).  On May 23, 2025, the court of appeals dismissed Plaintiff's appeal for lack of jurisdiction because the dismissal order did not dispose of all claims as to all parties.  (ECF No. 248).

## II.   PLAINTIFF'S MOTION TO LIFT ABEYANCE

As an initial matter, the Court recommends granting Plaintiff's Motion to Lift Abeyance and Rule on Plaintiff's motion for default judgment as to Defendant Ceballos.  (ECF No. 244).

On April 22, 2022, the Court held Plaintiff's Motion for Default Judgment as to Defendant Ceballos in abeyance because "where a complaint alleges that defendants are jointly liable and one of them defaults, judgment should not be entered against the defaulting defendant until the matter has been adjudicated with regard to all defendants." *In re First T.D. & Inv., Inc.,* 253 F.3d 520, 532 (9th Cir. 2001) (footnote omitted).  (ECF No. 54).

As judgment has now been entered against the remaining defendants, there is no longer any reason to delay ruling on Plaintiff's motion for default judgment as to Defendant Ceballos.

## III.   LEGAL STANDARDS

### A.   Motion for Default Judgment

Federal Rule of Civil Procedure 55(b) addresses when the Court may enter a default judgment, following a clerk's entry of default.  Rule 55(b) specifically provides that:

b.  Entering a Default Judgment

1. *By the Clerk*. If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk—on the plaintiff's request, with an affidavit showing the amount due—must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person.

2. *By the Court*. In all other cases, the party must apply to the court for a default judgement. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared personally or by a representative, that person or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals—preserving any federal statutory right to a jury trial— when, to enter or effectuate judgment, it needs to:

    A.  conduct an accounting;

    B.  determine the amount of damages;

    C.  establish the truth of any allegation by evidence; or

    D.  investigate any other matter.

9

Whether to enter a default judgment lies within the Court's discretion. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). "Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

Where a defendant has failed to respond to the complaint, the Court generally presumes that all well-pleaded factual allegations relating to liability are true. *Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977); *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987). However, the Court does not presume that any factual allegations relating to the amount of damages suffered are true. *Geddes*, 559 F.2d at 560; *TeleVideo Sys., Inc.*, 826 F.2d at 917–18.

Finally, before awarding a default judgment against a defendant, the Court must determine the adequacy of service of process, as well as the Court's jurisdiction over the subject matter and the parties. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) ("When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties.").

## B.     Punitive Damages

Punitive damages may be awarded in a § 1983 case "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). The Ninth Circuit has held that "[t]he standard for punitive damages under § 1983 mirrors the standard for punitive damages under common law tort cases" and thus "malicious, wanton, or oppressive acts or omissions" properly form the basis for punitive damages under § 1983. *Dang v. Cross*, 422 F.3d 800, 807 (9th Cir. 2005).

10

"An act or omission is oppressive . . . 'if done in a manner which injures or damages or otherwise violates the rights of another person with unnecessary harshness or severity as by misuse or abuse of authority or power or by taking advantage of some weakness or disability or the misfortunes of another person.'" *Dang*, 422 F.3d at 809. "When a jury is instructed that it may award punitive damages for oppressive acts, the jury must consider the relative positions of power and authority between the parties and determine whether the defendant misused his power or authority or abused the plaintiff's weakness in the course of the wrongful conduct." *Id.* at, 810

"Under the Due Process Clause of the Fourteenth Amendment, the determination whether punitive damages are excessive turns on several factors, including the egregiousness of the conduct, the proportionality between punitive and compensatory damages awards, and the amount of the punitive damages awarded or upheld in similar cases." *Rodriguez v. County of Los Angeles*, 891 F.3d 776, 806 (9th Cir. 2018).

## IV.    ANALYSIS

### A.    Service of Process and Court's Jurisdiction

To begin, the Court finds that service of process was adequate. On January 27, 2022, the United States Marshals Service filed a return of service, certifying that Defendant Ceballos was personally served with the First Amended Complaint. (ECF No. 37 at 1).[4] The Court also mailed Defendant Ceballos a copy of Plaintiff's Second Amended Complaint and gave him a deadline of March 9, 2022, to respond. (ECF No. 42 at 3).[5] Defendant Ceballos did not respond to either complaint. Accordingly, on March 18, 2022, at the request of Plaintiff (ECF No. 47), the Clerk of Court entered Defendant Ceballos's default (ECF No. 48). The Clerk's Certificate of Entry of Default acknowledges that "the defendant [has] been duly served with process as appears from the record and papers on file herein." (ECF No. 48).

---

[4] Again, although the proof of service does not specify, the First Amended Complaint was the operative complaint at the time, and the version that was ordered to be served in the Court's order directing service. (ECF No. 33, at p. 4).

[5] Plaintiff was allowed to amend his complaint solely to remove claims and defendants that were dismissed by the Court. (ECF No. 42 at 2).

Additionally, the Court has subject matter jurisdiction over this section 1983 action in which Plaintiff alleges violations of his constitutional rights. 28 U.S.C. §§ 1331 & 1343. The Court has personal jurisdiction over the parties because Plaintiff consented to the Court's jurisdiction by filing this lawsuit, and the Court acquired personal jurisdiction over Defendant Ceballos when he was personally served in this district.

**B.    Application of the *Eitel* Factors**

As service was adequate and the Court has subject matter and personal jurisdiction, the Court next turns to the *Eitel* factors as stated in *Eitel*, 782 F.2d at 1471–72.

The Court finds that the first *Eitel* factor, the possibility of prejudice to the plaintiff, weighs in favor of granting default judgment because if the Court does not grant default judgment, Plaintiff will not have a remedy as to the damages caused by the unconstitutional conduct of Defendant Ceballos.

As to the second and third factors, the merits of Plaintiff's claim and the sufficiency of the complaint, the Court finds that these factors also weigh in favor of granting default judgment. District Judge Dale A. Drozd previously held that Plaintiff's allegations against Defendant Ceballos stated a claim for violation of the Fourth Amendment, based on Plaintiff's allegations that after he was subjected to a full body scan, he was immediately subjected to an additional strip search without obvious justification. (ECF No. 22 at 3) ("Several circuit courts have allowed inmates to pursue Fourth Amendment claims where, as here, the inmate was subjected to multiple searches despite having no opportunity to obtain contraband between inspections.").

Moreover, in addition to the allegations in Plaintiff's complaint, evidence submitted in support of the motion for summary judgment brought by Defendants Moreno, Chavez, Valencia, and Dohs (ECF No. 184) demonstrated that Defendant Ceballos subjected Plaintiff to an unreasonable strip search without a legitimate reason to do so. As described above, each moving Defendant submitted their own declaration pointing solely to Defendant Ceballos as the officer who conducted the unclothed search of Plaintiff in the gymnasium without justification. Defendant Moreno stated, "I ordered Plaintiff to be returned to the Facility A gymnasium

holding cell until the mass search of building 2 was complete," and "I did not order Defendant Ceballos to conduct a search of Plaintiff's unclothed body after Plaintiff was processed through the low dose body scanner."  (ECF No. 184-6, Moreno Decl. ¶¶ 11 and 13).  Defendant Dohs stated he followed Defendant Moreno's orders and helped Defendant Chavez bring Plaintiff back to the gymnasium "until the mass search of Facility A, Building 2 was complete," and he did not "order or witness Plaintiff submit to an unclothed body search." (ECF No. 184-5, Dohs Decl. ¶¶ 10 and 13).  Defendants Chavez and Valencia similarly stated that they did not witness Plaintiff submit to an unclothed body search on January 6, 2019.  (ECF No. 184-3, Chavez Decl. ¶¶ 7-8); (ECF No. 184-4, Valencia Decl. ¶¶ 9-10).  The declarations show that Defendant Ceballos acted alone and against the orders of Defendant Moreno, a superior officer. Moreover, those declarations show that there was no need for a further search of Plaintiff following the x-ray body scan.  Therefore, the second and third *Eitel* factors weigh in favor of granting Plaintiff's motion for default judgment.

As to the fourth factor, the sum of money at stake in the action, the Court finds that this factor also weighs in favor of granting default judgment.  As described below, the Court is recommending that Plaintiff be granted a default judgment in the amount of $10,000, which is not an unduly high amount of damages.

As to the fifth factor, the possibility of a dispute concerning material facts, given that the four other defendants submitted evidence that supported Plaintiff's allegations as to Defendant Ceballos, there is low possibility of a dispute concerning material facts. Accordingly, the Court finds that this factor weighs in favor of granting default judgment.

As to the sixth factor, whether the default was due to excusable neglect, Defendant Ceballos was personally served with a copy of the First Amended Complaint, and the Court mailed him a copy of the Second Amended Complaint.  There is nothing before the Court suggesting that Defendant Ceballos's default was due to excusable neglect.  Accordingly, the Court finds that this factor weighs in favor of granting default judgement.

Finally, as to the seventh factor, the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits, "[a]lthough federal policy may favor decisions on

the merits, Federal Rule of Civil Procedure 55(b) permits entry of default judgment in situations such as this where defendant[] refuse[s] to litigate." *Walters v. Shaw/Guehnemann Corp.*, 2004 WL 1465721, at *4 (N.D. Cal. Apr. 15, 2004).  Furthermore, default judgment is supported by the evidence submitted by other parties in this case.

After weighing the factors, all of which weigh in favor of granting default judgment, the Court finds that default judgment is appropriate.

### C.     Compensatory Damages

The Court next turns to the amount of damages that should be awarded.

Plaintiff seeks $5,000 in compensatory damages "based on the constitutional injury of subjecting plaintiff to a vindictive, harassing, excessive, and unreasonable search of his person." (ECF No. 139 at 3).  Plaintiff also estimated his damages based on the "value of humiliation harm caused by multiple intensive searches." (ECF No. 50 at p. 2).  Plaintiff's request is supported by his own declaration signed under penalty of perjury.  (ECF No. 139, p. 3).

The Court has reviewed potential comparable cases.  The district court in *Holmes v Plath*, awarded the plaintiff in that case $20,000 in compensatory damages where the defaulting correctional officer defendant was alleged to have sexually harassed the plaintiff on multiple occasions.  *Holmes v. Plath,* 2007 WL 2782839, at *2–3 (E.D. Cal., Sept. 24, 2007, No. 101CV6359AWIWMWP).  In *Smith v. City of Oakland*, the district court awarded $100,000 in compensatory damages for a strip search after two individuals were subjected to an unlawful traffic stop and subjected to a strip search "in public view" in front of "both friends and strangers."  *Smith v. City of Oakland*, No. C 07-4179 MHP, 2011 WL 3360451, at *34-*35 (N.D. Cal. Aug. 4, 2011).  The court held that the award was appropriate as actual damages for "humiliation, mental anguish and emotional distress."  *Id*.

Upon review, the Court finds that Plaintiff's request for $5,000 in compensatory damages is reasonable.  Plaintiff is an inmate who was subjected to an unclothed search by a single officer without legitimate justification.  Indeed, other officers had already ordered that Plaintiff could return to his cell when Defendant Ceballos took Plaintiff to an otherwise empty

14

gymnasium and required him to submit to an unclothed body search if he wanted to return to his cell.  As the Ninth Circuit has stated, "[t]he feelings of humiliation and degradation associated with forcibly exposing one's nude body to strangers for visual inspection is beyond dispute."  *Thompson v. City of Los Angeles* 885 F.2d 1439, 1446 (9th Cir. 1989), *overruled on other grounds by Bull v. City and County of San Francisco* 595 F.3d 964 (9th Cir. 2010).  *See, also Shorter v. Baca*, 895 F.3d 1176, 1188 (9th Cir. 2018) (quoting *Kirkpatrick v. City of Los Angeles,* 803 F.2d 485, 489–90 (9th Cir. 1986) ("'[T]he fact that a strip search is conducted reasonably, without touching and outside the view of all persons other than the party performing the search, does not negate the fact that a strip search is a significant intrusion on the person searched.'").  Although Plaintiff's search did not involve any sexual harassment or public exposure, unlike the comparable cases cited above, Plaintiff's requested damages are also significantly lower than the damages awards in those cases.

The Court thus recommends awarding Plaintiff $5,000 in compensatory damages.

### D.    Punitive Damages

The Court turns to Plaintiff's request for punitive damages.  Plaintiff seeks an award of $25,000 in punitive damages against Defendant Ceballos "based on the degree of reprehensibility inherent in the facts of the case."  (ECF No. 50 at 2).

The Court has located other cases awarding punitive damages based on unconstitutional searches of inmates, although those cases involved sexual harassment or public exposure. *See, Holmes*, 2007 WL 2782839, at *2–*3  (awarding $20,000 in punitive damages after default judgment where correctional officer cuffed plaintiff up, rubbed against plaintiff forcefully, and threatened to grab plaintiff's penis and stroke it);  *Cleveland v. Curry*, No. 07-CV-02809-NJV, 2014 WL 690846, at *10 (N.D. Cal. Feb. 21, 2014) (approving jury award of punitive damages of $5,000 for each inmate against correctional officer who squeezed inmates genitals during clothed-body searches); *Smith v. City of Oakland,* No. 07-6298 MHP, 2011 WL 5325484, at *5 (N.D. Cal. Nov. 3, 2011) (awarding punitive damages in the amount of $25,000 and $15,000 to parolees who were subject to public strip searches by police).

Here, there is no indication of sexual harassment or public exposure in this case, which warrants lower punitive damages here.  However, the Court finds that some punitive damages are warranted because the evidence indicates that Defendant Ceballos acted in an oppressive manner by abusing his authority over Plaintiff in order to violate Plaintiff's constitutional rights.  Again, Plaintiff had already undergone a full body scan and was told by other officers that he could return to his cell.  Defendant Ceballos was aware of this, and had no legitimate basis to require another search.  Nevertheless, and without knowledge of other officers, Defendant Ceballos took Plaintiff to an otherwise empty gymnasium and told him that he had to take off all of his clothes and be searched by Defendant Ceballos in order to return to his cell.  As the two were alone in the gymnasium, Plaintiff was in a vulnerable position without recourse to any other officers.  Defendant Ceballos thus abused his authority over Plaintiff to require an unclothed search that was wholly unnecessary, in violation of Plaintiff's constitutional rights.  *See Dang*, 422 F.3d at 809 ("An act or omission is oppressive . . . 'if done in a manner which injures or damages or otherwise violates the rights of another person with unnecessary harshness or severity as by misuse or abuse of authority or power or by taking advantage of some weakness or disability or the misfortunes of another person.'").

Accordingly, this Court recommends punitive damages against Defendant Ceballos for conducting an additional unclothed body search of Plaintiff without justification.  However, this Court recommends reducing Plaintiff's requested award to $5,000 in punitive damages.

### E.    Costs

Lastly, the Court will recommend that Plaintiff's request for costs in the amount of $350 be denied because Plaintiff did not request an award of costs in his complaint. Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings.").[6]

---

[6] While the Court is not recommending that Plaintiff be granted costs as part of the default judgment, nothing in this order precludes Plaintiff from submitting a Bill of Costs after judgment has been entered. *See* Eastern District of California Local Rule 292(b) ("Filing of Cost Bill. Within fourteen (14) days after entry of judgment or order under which costs may be claimed, the prevailing party may serve on all other parties and file a bill of costs conforming to 28 U.S.C. § 1924. The cost bill shall itemize the costs claimed and shall be supported by a memorandum of costs and an affidavit of counsel

**V.    CONCLUSION AND RECOMMENDATIONS**

Based on the foregoing, it is hereby **RECOMMENDED** that:

1.    Plaintiff's motion to lift stay and abeyance and request for entry of judgment by default (ECF No. 244) be **GRANTED**;

2.    Plaintiff's Motion for Default Judgment (ECF No. 50) against Defendant Ceballos be **GRANTED IN PART**;

  a.    Judgment be entered in favor of Plaintiff and against Defendant Ceballos on Plaintiff's Fourth Amendment claim under 42 U.S.C. § 1983 for unreasonable search;

  b.    Plaintiff be awarded $5,000 in compensatory damages and $5,000 in punitive damages against Defendant Ceballos.

3.    The Clerk of Court be directed to close this case.

These findings and recommendations are submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty days after being served with these findings and recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Objections, if any, shall not exceed fifteen pages and may not include exhibits. The Court will not consider exhibits attached to the Objections. Exhibits may be referenced by CM/ECF document and page number if already in the record before the Court. Any pages filed in excess of the fifteen page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C).

Any response to the objections shall be served and filed within fourteen days after service of the objections.

\\\

\\\

---

that the costs claimed are allowable by law, are correctly stated, and were necessarily incurred. Cost bill forms shall be available from the Clerk upon request or on the Court's website.").

1    The parties are advised that failure to file objections within the specified time may

2    result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir.

3    2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

4

5    IT IS SO ORDERED.

6    Dated:    **August 8, 2025**                        /s/ Erica P. Grosjean

7                                                   UNITED STATES MAGISTRATE JUDGE